

FILED
IN OPEN COURT

NOV 2 1 2024

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

UNITED STATES OF AMERICA

v.

XAVIER DEJUAN JACKSON,

*Defendant.*

Case No. 1:24-CR-212

## STATEMENT OF FACTS

The United States and the defendant, XAVIER DEJUAN JACKSON, agree that at trial, the United States would have proven beyond a reasonable doubt and with admissible and credible evidence that, from at least January 13, 2024, until on or about January 29, 2024, in the Eastern District of Virginia, and elsewhere, the defendant did attempt to and did employ, use, persuade, induce, entice, and coerce a minor, MINOR VICTIM 1, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing and having reason to know that that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, and that such visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and that visual depiction had actually been transported and transmitted using any means and facility of interstate commerce and affecting interstate and foreign commerce, to wit: video and image files depicting MINOR VICTIM 1 engaged in sexually explicit conduct produced using a cell phone.

The United States and the defendant further agree that at trial, the United States would have proven beyond a reasonable doubt and with admissible and credible evidence that on or about March 1, 2024, within the Eastern District of Virginia and elsewhere, the defendant, XAVIER DEJUAN JACKSON, did attempt to and did employ, use, persuade, induce, entice, and coerce a minor, MINOR VICTIM 2, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing and having reason to know that that such visual depiction would be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, and that such visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and that visual depiction had actually been transported and transmitted using any means and facility of interstate commerce and affecting interstate and foreign commerce, to wit: video files depicting MINOR VICTIM 2 engaged in sexually explicit conduct sent using the internet.

The United States and the defendant further agree that at trial, the United States would have proven beyond a reasonable doubt and with admissible and credible evidence that between on or about January 16, 2024, and on or about January 29, 2024, in the Eastern District of Virginia and elsewhere, the defendant, XAVIER DEJUAN JACKSON, did knowingly transport MINOR VICTIM 1, an individual who had not attained the age of 18 years, in interstate commerce with intent that MINOR VICTIM 1 engage in sexual activity for which a person can be charged with a criminal offense, namely, Section 18.2-371(ii) of the Code of Virginia.

The United States and the defendant further agree that at trial, the United States would have proven beyond a reasonable doubt and with admissible and credible evidence that between

2

on or about March 1, 2024 and on or about June 23, 2024, within the Eastern District of Virginia and elsewhere, the defendant, XAVIER DEJUAN JACKSON, using any facility and means of interstate and foreign commerce, did knowingly attempt to persuade, induce, entice, and coerce MINOR VICTIM 2, an individual who had not attained the age of 18 years, to engage in a sexual activity for which a person can be charged with a criminal offense, namely, Section 18.2-371(ii) of the Code of Virginia.

In addition, the United States and the defendant agree that at trial, the United States would have proven the following facts, among others, beyond a reasonable doubt with admissible and credible evidence:

### MINOR VICTIM 1

1. The defendant virtually met MINOR VICTIM 1 on a social media application in January 2024. The two had no history, social connection, or other link to one another. MINOR VICTIM 1 revealed to the defendant she lived with her parents, went to high school, and was seventeen years old. The defendant annotated MINOR VICTIM 1's birthday in his cell phone's InkPad application under a "note" titled MINOR VICTIM 1's name; next to the numbered month and day of her months-away birthday, he wrote, "18."

2. The defendant transported MINOR VICTIM 1 across state lines to engage in sexual activity with him. The defendant traveled in his vehicle from his residence in Reston, Virginia to pick up MINOR VICTIM 1 either at her parent's home or at her high school, both of which were located in Maryland.

3. Each time the defendant engaged in sexual activity with MINOR VICTIM 1, he recorded it on his Samsung Galaxy S23 Ultra cell phone. The defendant then distributed the videos he produced to MINOR VICTIM 1 via Snapchat.

4. The defendant first transported MINOR VICTIM 1 from her Maryland residence to his Virginia apartment for sexual activity on January 16, 2024. He drove approximately 40 minutes from his Reston apartment to the home MINOR VICTIM 1 lives in with her mother, then transported her the 40 minutes back to his apartment. There, he escorted MINOR VICTIM 1 directly to his room where he had set up a ring light in front of his bed, and he placed his Samsung Galaxy S23 Ultra on an awaiting tripod. The defendant recorded two videos and created at least one image file of his sexual activity with MINOR VICTIM 1 during this encounter:

a. Video file 20240116_200210 (1).mp4 (Duration: 04:04) depicts MINOR VICTIM 1 fully nude kneeling on the side of the defendant's bed. MINOR VICTIM 1 bends over as the defendant approaches the bed. MINOR VICTIM 1 pulls MINOR VICTIM 1 closer to the edge of the bed and inserts his penis into her vagina. The remainder of the video shows the defendant penetrating MINOR VICTIM 1 as she remains bent over. The entire video either depicts sexual activity or the participants fully nude.

b. Video file 20240129_112611 (1).mp4 (Duration: 00:23) depicts MINOR VICTIM 1 completely nude lying on her stomach on the defendant's bed. Her head is near the head of the bed; her feet are at the foot of the bed. The defendant climbs on top of MINOR VICTIM 1, inserts his penis into her vagina, and begins to thrust. The entire video either depicts sexual activity or the participants fully nude.

c. Image file, VideoCapture_20240117-211929.jpg depicts MINOR VICTIM 1 bent over on the side of the bed with white fluid dripped down her left buttocks. The defendant's hand is partially visible in the image.

4

5. On January 22, 2024, the defendant traveled to the home of MINOR VICTIM 1 with the intent of transporting her to his apartment for sexual activity, but his plan was foiled upon learning MINOR VICTIM 1 began her menstruation cycle. The next day, the defendant texted MINOR VICTIM 1, "I mean I was ready to fuck your ass Monday until we had turn around but next time I see you hopefully I can bring you here and give you some extra special dick."

6. One week later, the defendant again made the hour-plus roundtrip to transport MINOR VICTIM 1 to his apartment for sexual activity. On January 29, 2024, he picked her up at her Maryland residence and returned to his Reston, Virginia apartment. He recorded a ten-minute video of him penetrating MINOR VICTIM 1 from behind on his bed. The following day, MINOR VICTIM 1 texted the defendant reflecting upon the sexual activity: "I was tryna move lmao but u kept bringing me back [crying emoji]." The defendant replied, "Of course cause I wasn't done yet." She said, "U went in like literally I felt that shit in my stomach." He said, "Good that's where I wanted you to feel it."

7. A folder on the defendant's phone titled MINOR VICTIM 1's name contained 7 images of her, 4 of which constitute child pornography, as well as 39 total videos, 23 of which constitute child pornography and included the 3 that were produced by the defendant.

**MINOR VICTIM 2**

8. The defendant's communication with MINOR VICTIM 2 originated on Instagram in February 2024. The two had no history, social connection, or other link to one another. On or about March 1, 2024, the communication migrated to Snapchat.

9. On March 1, 2024, MINOR VICTIM 2 confessed to the defendant they[1] were not eighteen years old, as they previously told him. The defendant inquired how old they were, to

---

[1] Minor Victim 2 identifies as non-binary and goes by the pronouns, "they/them."

which MINOR VICTIM 2 said, "I'm 14, I mean it's not that bad!" He replied, "Oh this explains some things. So were gonna let me fuck you and never tell me your real age? I'm not mad btw just asking a question . . . So you aren't tryna set me up or anything right?" The defendant soon after disclosed he "had [his] suspicions." When MINOR VICTIM 2 asked how old he suspected they were, the defendant replied, "Like 17 maybe 16 but that was a stretch and ya it's not too hard when you know what to look for."

10. Within minutes of MINOR VICTIM 2 revealing they were 14 years old, the defendant resumed sexually explicit banter with them. MINOR VICTIM 2 explained they would still like to have sex with the defendant as they had previously discussed, but they wanted him to "be comfortable." He said, "Never said I wasn't, but now I wanna hear you beg to get fucked by me whether on video or audio message . . . And I still wanna see you naked too." After MINOR VICTIM 2 paused the conversation for five minutes because their mom was asking for them, they asked if he still wanted the audio message. He replied, "Yep thanks and can I still see you nude?"

11. MINOR VICTIM 2 sent the defendant a voice message breathing heavy and begging him to do sexual things to them. At 10:05 PM, he replied, "Thought you were gonna make that a video . . ." MINOR VICTIM 2 then sent a video at 10:08 PM of them caressing their breasts and touching their exposed vagina. Metadata from MINOR VICTIM 2's cell phone shows that particular video was created on their phone at 10:06 PM.

12. After they sent the first video, the defendant asked, "Can I see your ass too?" MINOR VICTIM 2 then sent a video at 10:21 PM of them spreading their buttocks. The same turquoise undergarments from the video minutes before were visible in this second video. Metadata from their cell phone shows that particular video was created on their phone at 10:20

PM. The defendant received both of these videos via the Snapchat application on his Samsung Galaxy S23 Ultra cell phone.

13. To this video, the defendant complained: "Can you like stand up so I can see a better view of it is a little dark sorry." MINOR VICTIM 2 said, "I can't right now but maybe late?" The defendant assured them, "Yep that's fine babe also you been lying cause I like your body your boobs look good and Imma definitely end up stretching that pussy cause it looks small and tight."

14. The defendant received these videos via Snapchat and stored them in a folder titled MINOR VICTIM 2's name on his Samsung Galaxy S23 Ultra cell phone. Also stored within that folder were three videos depicting MINOR VICTIM 2 engaged in sexual activity, which he received on or about June 23, 2024.

15. On March 2, 2024, the defendant asked MINOR VICTIM 2 to meet in person for sexual activity. Over the next several days, the two discuss potential opportunities. MINOR VICTIM 2 expressed fear of embarrassing herself, making mistakes during sexual activity, and concern over being "useless and ugly." The defendant assured her she was beautiful.

16. Five days later, the defendant again inquired when MINOR VICTIM 2 would meet him in person for sexual activity. MINOR VICTIM 2 proposed the forthcoming weekend. The two discussed Minor Victim 2 sneaking out and their status as a virgin, and the defendant assured them, "Nah you'd be the 2nd virgin I'd fuck lol but I mean while I'm fucking you I won't be fucking anyone else fr." MINOR VICTIM 2 excitedly responded, "Wait really? That's so nice!! Thank you." The defendant continued to press MINOR VICTIM 2 for her address. She said, "Okay just don't murder me," to which he replied, "Never I'm only tryna kill that pussy

with my dick lol." After MINOR VICTIM 2 provided their address, he said, "You're a little farther than I thought but it's cool thanks 😊."

17. For months thereafter, the defendant and MINOR VICTIM 2 engaged in sexual banter, exchanged sexually explicit photos, and discussed various ultimately unfulfilled plans to meet in person for sexual activity. They discuss locations the defendant could pick Minor Victim 2, including her specific high school or a mall near her parent's house.

18. On June 23, 2024, MINOR VICTIM 2 asked the defendant when he would next be available to meet up for sexual activity. He replied in a week and a half because he would be out of the country. He was arrested on July 1, 2024 coming back from that trip out of the country.

**PERSON BELIEVED TO BE A MINOR**

19. On February 4, 2024, the defendant initiated contact with a young-appearing female person on Snapchat. He said, "You're very cute definitely wish I was in Cali so how old are you?" The young-appearing female responded, "15 u?" The defendant replied he was nineteen years old (he was 28 years old). The same day, the defendant wrote to the person he believed to be a minor, "You have a pretty body is it possible I can see more of it."

20. On March 25, 2024, the defendant inquired how much this person he believed to be a minor would charge for nude depictions of herself. He sent a detailed request describing what type of sexually explicit videos he wanted: "Hmmm ok I was looking for nude videos of you you [sic] stripping and bending over and spreading your ass cheeks and another of you playing with yourself." The person he believed to be a minor said that sort of video would cost $45. After acquiring this person's PayPal account, the defendant sent her $45.

21. The following video files are saved on the defendant's Samsung Galaxy S23 Ultra cell phone with a creation date of March 25, 2024, approximately 2 hours after he sent money to

the PayPal account of the person he believed to be a minor. The content of the videos match the request he made hours before. Further investigation revealed the person the defendant believed to be a minor was nineteen years old.

22. The visual depictions of MINOR VICTIM 1 and MINOR VICTIM 2 described above remained on the defendant's Samsung Galaxy S23 Ultra cell phone. The defendant was in possession of his Samsung Galaxy S23 Ultra when he traveled from London, England to Virginia on an international flight through the Dulles Airport. The Samsung Galaxy S23 Ultra belonged to the defendant and was used exclusively by him. The defendant knew the Samsung Galaxy S23 Ultra contained visual depictions of minors engaged in sexually explicit conduct. The Samsung Galaxy S23 Ultra was manufactured outside of the Commonwealth of Virginia.

\* \* \* \* \* \* \* \* \*

23. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

24. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date:  October 28, 2024          By:  _____

Vanessa Strobbe
Assistant United States Attorney

10

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, XAVIER DEJUAN JACKSON, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Xavier Dejuan Jackson

I am Damon D. Colbert, the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Damon D. Colbert
Counsel for the Defendant

11