UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cr-00212-MSN |
| | ) | |
| XAVIER D. JACKSON, | ) | |
| Defendant. | ) | Sentencing: February 27, 2025 |

**XAVIER D. JACKSON'S SENTENCING MEMORANDUM**

Xavier D. Jackson respectfully requests that the Court grant a variance from the advisory Guidelines range, sentence him to the mandatory minimum sentence of imprisonment for each offense, and run those sentences concurrently. As explained below, a variant sentence of 180 months is substantively reasonable because it satisfies the standards set forth in 18 U.S.C. § 3553(a). It is sufficient to serve the purposes of punishment, deterrence, incapacitation, and rehabilitation of Mr. Jackson.

*Legal Standard*

The Court "'shall impose a sentence sufficient, but not greater than necessary, to comply' with four purposes of sentencing—just punishment, adequate deterrence, protection of the public, and rehabilitation through training or treatment."[1] "[I]n fulfilling sentencing's purposes, a district court must consider and weigh (1) the nature of the offense and the defendant's history and characteristics; (2) the kinds of sentences legally available; (3) the advisory sentencing range provided by the Sentencing Guidelines; (4) any relevant policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentencing disparities; and (6) the

---

[1] *United States v. Fowler,* 948 F.3d 663, 668 (4th Cir. Md. January 27, 2020); 18 USCS § 3553(a)(2).

need for restitution."[2] So long as the Court considers and weighs these standards, it "has considerable discretion to select the particular sentence to impose."[3]

*The Nature of the Offenses*

Mr. Jackson yields indefensible terrain ostentatiously: He had sex with a pubescent female who he transported to his home, crossing state lines to do so; he filmed that intercourse and stored recordings on his smartphone; he had sexually charged communications with another pubescent female and stored illegal images and video of that female on his smartphone. But the government's dehumanizing armchair-psychologist conclusion that Mr. Jackson is a "pursuit predator"[4] "like [a] lion[]"[5] is emotive utterance. Mr. Jackson has accepted responsibility for his offense conduct. Further, while he has been incarcerated, he has been able to read legal documents, including Fourth Circuit opinions, concerning the offenses he has pleaded guilty to, so he understands that he must be punished—and rehabilitated.

Mr. Jackson did not target the pubescent females. He met them on social-media applications enjoyed legally by many adults. His parade of horribles began when he failed to cease communicating with the pubescent females when they disclosed that they were under 18 years old.

*Mr. Jackson's History and Characteristics*

Mr. Jackson was raised in a loving, supportive two-parent household in Springfield, Virginia. His parents stressed Christian values and academic achievement, and they sheltered him from exposure to many secular things like dating and socializing with the opposite sex. He

---

[2] *United States v. Fitzpatrick*, No. 24-4102, 2025 U.S. App. LEXIS 1259 at *11 (4th Cir. Jan. 21, 2025).
[3] *Id*.
[4] Dkt. 30 at 1.
[5] *Id*.

2

thrived in church, specifically concerning developing his musical talents, and academically. The character letters attached to this memorandum as *Exhibit A* detail various aspects of his good character.

      A negative upshot of his sheltered upbringing was that his emotional intelligence concerning interpersonal relationships with females was stunted. During his adolescence, while his peers were interacting with the opposite sex in social settings, Mr. Jackson was in church or in his home looking at a computer monitor. His parents did not permit him to fraternize with most of his peers. They did allow Mr. Jackson to spend time with one other academically driven adolescent male. Mr. Jackson and that male shared a fondness for computer gaming and other introverted pursuits. Unfortunately, that male introduced Mr. Jackson to child pornography, depicting pubescent females, at a time in Mr. Jackson's life when he was trying to understand his sexuality and how to express it in a healthy manner. As Mr. Jackson progressed into adulthood, he found it difficult to develop interpersonal relationships with women who were his age or older. His stunted emotional growth caused him to feel more confident and secure with younger, pubescent females.

      Mr. Jackson's psychosexual risk assessment, the report for which is attached to this memorandum as *Exhibit B*, shows both that he is not the predator the government claims he is and that he can be rehabilitated. Dr. Katherine Robinson concludes that he does not have Pedophilic Disorder and that he poses an average risk for recidivism.

*The Need for a Sentence to Reflect the Basic Aims of Sentencing*

      A 180-month sentence followed by supervised release provides just punishment, adequate deterrence, protection of the public, and time for rehabilitation through treatment.

      Mr. Jackson has no criminal convictions. The mandatory-minimum sentences for his

offenses are severe. Given his characteristics described above, Dr. Robinson's report, and the attached character letters, 180 months is a severe penalty for him, especially if the Court considers that he may not ever again spend time with his parents, both of whom are senior citizens, outside of a federal prison.

Regarding specific deterrence, there is nothing in Mr. Jackson's history to suggest that 180 months of imprisonment followed by a term of supervised release would be inadequate to deter him from engaging in further criminal activity. He understands that his recidivating would likely mean his dying in prison. And he has accepted responsibility for his conduct and is remorseful. Those are the rudiments for avoiding recidivism.

A 180-month sentence would incapacitate Mr. Jackson for the foreseeable future. The United States Congress has determined that a mandatory term of 15 years is appropriate for certain of the crimes Mr. Jackson committed. The public would be adequately protected if the Court imposes the mandatory minimum.

Finally, Mr. Jackson's requested sentence would afford him a significant amount of time to be rehabilitated through treatment and participation in programs. Based on Dr. Robinson's report, Mr. Jackson appears to be amenable to rehabilitation. Without a formal order from the Court, he has started the process of thinking about rehabilitation, which shows his innate commitment to this aspect of his sentence.

*Conclusion*

For the reasons specified above, Mr. Jackson respectfully requests that the Court grant a variance from the advisory Guidelines range, sentence him to the mandatory minimum sentence of imprisonment for each offense, and run those sentences concurrently.

                Respectfully submitted,

                Xavier Jackson
                BY COUNSEL

/s/
Damon D. Colbert (VSB No. 46760)
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
Phone: 571.210.0000
Fax: 571.500.2220
Email: damon@colbertlegal.com
*Counsel for Defendant*